UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| THOMAS RAY MEADE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 08-84-ART |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| JOYCE ARNOLD, et al., ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\* \* \* \* \*

This is a sad case where an individual, Carla Meade, killed herself after quitting her job. Her estate complains that the conduct of her supervisor, Defendant Joyce Arnold, led to this tragedy. That conduct occurred, however, during Ms. Meade's employment, and thus, the Kentucky Workers' Compensation Act bars this suit. Therefore, the Court must grant the defendants' motion for summary judgment, R. 33.

### INTRODUCTION

The facts in this matter are largely undisputed and are as follows:

Ms. Meade was the Administrative Department Secretary at the Otter Creek Correctional Center. R. 1, Compl. at ¶ 4. She apparently missed work for health issues several times and was hospitalized between January 16, 2008, and January 18, 2008, for diabetes related problems. *Id.* at ¶ 6**.**

On January 16, 2008, Defendant Arnold, Warden of the Correctional Center, sent a letter to Ms. Meade via Assistant Warden Jeff Little. *Id.* at ¶ 7**;** R. 34, Dep. of Jeff Little at 11–13. This letter stated that Ms. Meade was "being transferred from [her] current position as the Administrative

Department Secretary at Otter Creek Correctional Center" and that her new position–effective immediately–would be "in the Security Department as the Secretary under the direction of the Chief of Security, Tina Hodge." R. 33, Exh. 3. The letter also informed her that "[a] PSN will follow describing the reason(s) for this transfer." *Id.* The plaintiff alleges that Defendant Arnold issued a "PSN"—which is a disciplinary action at CCA, *see* R. 34, Dep. of Jeff Little at 21-24—due to her absenteeism.

Two days later, on Friday, January 18, 2008, the hospital released Ms. Meade. R. 1, Part 2, Compl. at ¶ 6; R. 41, Dep. of Thomas Meade at 109–10. On January 22, 2008, Ms. Meade met with Defendant Arnold in her office. R. 33, Exh. 4, Aff. of Joyce Arnold at ¶ 9. She informed Ms. Meade that a PSN would be served on her later in the day. R. 45, Arnold Interview. Defendant Arnold claims to have told Ms. Meade that her attitude and work ethic needed to improve and that the job transfer was to help prevent Ms. Meade from being fired. *Id.* Defendant Arnold then apparently asked Ms. Meade whether she really wanted to work at CCA. *Id.* Ms. Meade responded in the negative and resigned. *Id.* While still in Defendant Arnold's office, Ms. Meade shot and killed herself. *Id.*; R. 33, Exh. 4, Aff. of Joyce Arnold ¶ 9.

Within a couple hours of Ms. Meade's death, Trooper Mike Goble arrived at Defendant Arnold's office and investigated the incident. R. 39, Dep. of Mike Goble at 8-9. Mr. Goble interviewed Defendant Arnold and taped a portion of the interview. *Id.* at 5-8. He learned that a disciplinary action had not been formally served on Ms. Meade but was pending for that day. *Id.* at 11. While apparently Ms. Meade felt she had been demoted, others told Mr. Goble that Ms. Meade had merely been given a job transfer with less responsibilities and the same pay status. *Id.* at 10-11.

Plaintiff Thomas Meade, Administrator of the Estate of Ms. Meade, filed suit in Floyd Circuit

Court against Defendant Arnold individually, Defendant Arnold as an agent of Corrections Corporation of America ("CCA"), and CCA. R. 1, Compl. The plaintiff alleged that Defendant Arnold committed the tort of outrage. *Id.* at ¶ 10. The defendants removed this suit, on diversity grounds, from Floyd Circuit Court on April 25, 2008. *See* R. 1. On February 18, 2009, the defendants moved the Court to dismiss this matter pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. R. 12. The Court conducted a telephonic hearing at which the plaintiff indicated that some discovery was necessary for him to adequately respond to the defendants' motion. At that point, the Court denied the motion without prejudice, allowed limited discovery, and instructed the defendants that they could re-file the motion to dismiss or file a motion for summary judgment if they deemed it appropriate to do so. *See* R. 32.

The defendants have now filed a Motion for Summary Judgment, R. 33, to which the plaintiff has responded, R. 35. The Court heard oral argument via telephone conference. *See* R. 44. The Court reserved judgment, as the plaintiff's counsel asked for time to submit an audio recording of part of Mr. Goble's interview of Defendant Arnold. *Id.* The plaintiff's counsel has since submitted the audio recording, R. 45, and the Court has reviewed it.

## DISCUSSION

Under Kentucky law, if an employer provides workers' compensation coverage for its employees, then workers' compensation is the exclusive remedy for an employee who has suffered an injury that arose out of and in the course of employment. *See* Ky. Rev. Stat. §342.690(1) ("If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the

3

employee provides the exclusive remedy"); Ky. Rev. Stat. § 342.0011(1) (defining "injury" as "any work-related traumatic event . . . arising out of and in the course of employment . . ."); *Travelers Indem. Co. v. Reker*, 100 S.W.3d 756, 760 (Ky. 2003); *Nunn v. First Healthcare Corp.*, No. 2003-CA-000777-MR, 2004 WL 2011282, at *1 (Ky. Ct. App. Sept. 10, 2004). This case possesses both of the elements of exclusivity—i.e., worker's compensation coverage and an injury arising out of and in the course of employment.

First, CCA had insurance in place to cover workers' compensation claims during the relevant time period of January 2008. R. 33, Exh. 1, Aff. of Loretta Owens at ¶ 2. It is true that Kentucky law allows employees to opt out of workers' compensation coverage. *See* Ky. Rev. Stat. § 342.395(1). However, Ms. Meade never rejected coverage under CCA's workers' compensation insurance policy. R. 33, Exh. 1, Aff. of Loretta Owens at ¶ 3. Without such a rejection, Ms. Meade is deemed to have accepted all the provisions of the Workers' Compensation Act. *See id.* Moreover, not only did Ms. Meade not reject workers' compensation coverage, but she affirmatively embraced it by filing a worker's compensation claim on November 14, 2000, for an unrelated incident. R. 33, Ex. 1, Aff. of Loretta Owens at ¶ 4. Thus, it is clear that CCA provided Ms. Meade with workers' compensation coverage.

Second, Ms. Meade's death is the kind of injury falling within the bounds of workers' compensation because it was a work-related traumatic event that arose out of and in the course of her employment. *See* Ky. Rev. Stat. § 342.0011. There is no dispute that all of Defendant Arnold's conduct, which allegedly injured Ms. Meade, occurred during Ms. Meade's employment at CCA. The letter informing Ms. Meade of her transfer was sent prior to Ms. Meade's resignation on January 22, 2008, notice of the PSN was given in the letter (also while Ms. Meade was still employed with

4

CCA), and Defendant Arnold allegedly gave verbal notice of the PSN just before Ms. Meade resigned. R. 33, Exh. 3; R. 33, Exh. 4 ¶ 9 (Arnold Aff.); R. 45, Arnold Interview. In addition, the injury of emotional distress that the plaintiff alleges, R. 35 at 12, occurred prior to Ms. Meade's resignation. Consequently, Ms. Meade's death and alleged emotional injuries stem from Defendant Arnold's conduct, which occurred during Ms. Meade's employment at CCA.

At oral argument, the plaintiff contended that, since the suicide occurred after Ms. Meade resigned, CCA's workers' compensation coverage should not bar the plaintiff's claims. However, the timing of the injury is not what Kentucky courts look at when determining whether an injury arises "out of and in the course of employment . . . ." *See* Ky. Rev. Stat. § 342.0011(1). Rather, the question is when the employer's harmful conduct occurred. *See Kroger Co. v. Willgruber,* 920 S.W.2d 61, 64 (Ky. 1996) (holding that the exclusivity of workers' compensation was inapplicable because the employer's harmful conduct occurred after the plaintiff was discharged).[1] Even if the injury manifests itself after the employment ends, a workers' compensation claim is permitted and is the exclusive remedy. *See AK Steel Corp. v. Pollitt,* 259 S.W.3d 505, 505-06 (Ky. Ct. App. 2008) (permitting worker's compensation benefits for work-related asbestos exposure, even though the alleged lung injuries were not manifest until years after employment terminated); *Lynn v. Triangle Insulation & Sheetmetal Co.*, No. 2001-CA-002309-MR, 2003 WL 1227568, at *5 (Ky. Ct. App. Jan. 24, 2003) (agreeing with the trial court that if the former employer had provided workers'

---

[1]The plaintiff also argues that *Willgruber* supports the conclusion that he can bring an action in tort in spite of the Workers' Compensation Act. R. 35 at 13. This is incorrect. In *Willgruber*, the alleged tortious conduct and the subsequent injury both occurred after the plaintiff's termination. *See Willgruber,* 920 S.W.2d at 64. Thus, the Workers' Compensation Act did not apply. In contrast, Defendant Arnold's allegedly harmful conduct occurred during Ms. Meade's employment. Clearly, *Willgruber* does not support the plaintiff's position.

compensation coverage to its employees, then workers' compensation would be the exclusive remedy for an employee's work-related asbestos exposure even though the employee was not diagnosed with asbestosis until years after his employment had terminated). Thus, the fact that Ms. Meade's suicide occurred after she resigned is immaterial here. Since Defendant Arnold's allegedly harmful conduct occurred while Ms. Meade was employed at CCA, the plaintiff's claims against CCA are barred. For the same reasons, the claims against Defendant Arnold are also barred since the Workers' Compensation Act bars liability on the part of employees to the same extent as it bars liability on the part of. Ky. Rev. Stat. § 342.690(1) ("The exemption from liability given an employer by this section shall also extend . . . to all employees . . . of such employer . . .").

It is true that there are two exceptions to the exclusivity of workers' compensation, but neither one applies here. Under the first exception, an injured or deceased employee may choose to bring an action in tort, instead of a workers' compensation claim, "[i]f injury or death results to an employee through the *deliberate intention* of his employer to produce such injury or death." Ky. Rev. Stat. § 342.610(4) (emphasis added). Under the second exception, if an employee, officer or director causes injury or death to the harmed party via "willful and unprovoked physical aggression," the harmed party can bring an action in tort to recover for the injury or death. Ky. Rev. Stat. § 342.690(1). However, because no reasonable jury could find that either exception to the Workers' Compensation Act is applicable here, workers' compensation is the only remedy available for Ms. Meade's alleged injuries. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 536 (6th Cir. 1999) (finding that the plaintiff's exclusive remedy was under the Act since "the plaintiff did not present evidence to the district court from which a reasonable jury could conclude that [the defendant] deliberately intended to cause [the employee's] death").

6

The first exception does not apply unless there was a deliberate intent to hurt the employee. Ky. Rev. Stat. § 342.610(4). Kentucky courts have interpreted this to mean that "the employer must have determined to injure an employee and used some means appropriate to that end, and there must be a specific intent." *Rainer v. Union Carbide Corp.*, 402 F.3d 608, 615 (6th Cir. 2005) (quoting *Fryman v. Elec. Steam Radiator Corp.*, 277 S.W.2d 25, 27 (Ky. 1955)); *see also Brierly*, 184 F.3d at 536 (stating that the exception is only applicable when a reasonable jury could conclude that the employer deliberately intended to cause the employee's death). Further, the Sixth Circuit has stated that "[t]he definition of 'deliberate intent[ion] to produce injury' as used in the [Kentucky's Workers' Compensation Act] is much narrower than 'intent' in general tort law, where the substantial certainty analysis is proper." *Rainer*, 402 F.3d at 616 (quoting the district court's opinion which was on appeal) (alterations in original).

To meet this exception, the plaintiff needed to show that the reason Defendant Arnold acted as she did was to harm Ms. Meade. The plaintiff has failed to present any such evidence. Rather, all the plaintiff has demonstrated is that Ms. Meade was harmed as a byproduct of the defendant's conduct.

Ms. Meade allegedly felt that Defendant Arnold demoted her for missing work due to illness and for being a diabetic. R. 39, Dep. of Mike Goble at 10-11.[2] The testimony of Mr. Little, who

---

[2] There is evidence suggesting that Ms. Meade was never demoted but simply given a job with less responsibilities while maintaining her pay status. R. 34, Dep. of Jeff Little at 12, 14-15; R. 33, Exh. 4, Aff. of Joyce Arnold at ¶ 4; R. 39, Dep. of Mike Goble at 10. Even assuming that Ms. Meade was demoted in the January 16, 2008, letter, there is no evidence of deliberate intent to harm Ms. Meade. Hence, in deciding whether the plaintiff's claim is barred, it is immaterial whether or not Ms. Meade was demoted. Nonetheless, given that this is a summary judgment motion, the facts are construed in the light most favorable to the plaintiff, and it is presumed Ms. Meade was demoted.

delivered the January 16, 2008, letter, and Defendant Arnold's affidavit suggest that Defendant Arnold was aware of Ms. Meade's diabetic issues and that missing work to deal with these issues was at least part of the reason for Ms. Meade's alleged demotion. R. 34, Dep. of Jeff Little at 18-21; R. 33, Exh. 4, Aff. of. Joyce Arnold at ¶ 5. While such a demotion for being ill may be reprehensible by most people's standards, the question is whether the demotion demonstrates a specific intent to harm Ms. Meade. The plaintiff has not produced any evidence—either circumstantial or direct—that this demotion was with the specific intent to harm Ms. Meade versus simply a business decision. And, even if this conduct was reckless or wanton, that would not be enough for the deliberate intention exception. *See Rainer,* 402 F.3d at 615 (quoting *Moore v. Envtl. Constr. Corp.*, 147 S.W.3d 13, 16-17 (Ky. 2004); *Brierly*, 184 F.3d at 536.

The plaintiff claims that the fact that Defendant Arnold delivered the letter to Ms. Meade at the hospital is circumstantial evidence that she specifically intended to harm Ms. Meade. Such a delivery may have increased the risk of harm to Ms. Meade, but the delivery itself did not show that Defendant Arnold had a specific intent to harm. *Rainer*, 402 F.3d at 615 ("The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong.") (quoting *Moore*, 147 S.W.3d at 16-17)). There is no evidence that the defendant sent the letter knowing that it would harm Ms. Meade. Instead, it appears the defendant had a message related to work that she wanted to get to Ms. Meade immediately, notwithstanding the fact that Ms. Meade was hospitalized. R. 33, Exh. 4, Aff. of Joyce Arnold at ¶ 5. Again, by most standards, this was inconsiderate at best. Indeed, Mr. Little apparently expressed concern about sending the letter to Ms. Meade's hospital bed. R. 34, Dep. of Jeff Little at 24-25; R. 33, Exh. 4, Aff.

8

of Joyce Arnold at ¶ 5. Sending this letter over Mr. Little's concern perhaps shows a lack of concern for Ms. Meade's emotions, but it does not demonstrate a deliberate intention to harm Ms. Meade. Further, this might demonstrate that the defendant was aware of a possible risk of harm to Ms. Meade, but such awareness is not enough to meet the deliberate intent exception. *See Rainer*, 402 F.3d at 615 (quoting *Moore*, 147 S.W.3d at 16-17). Simply put, there is no evidence that the defendant's reason for sending the letter was because she had a specific intent to harm Ms. Meade.

Kentucky courts have construed the deliberate intention exception narrowly. For example, in *Fryman* (the seminal Kentucky case on the exception), the plaintiff injured himself while operating a press that his employer allegedly knew to be defective and dangerous. *Fryman*, 277 S.W.2d at 26. The plaintiff alleged that his employer allowed him to work under these conditions without warning. *Id.* The Kentucky Supreme Court did not find that the defendant had a deliberate intent to injure the plaintiff. *Id.* Rather, the court concluded that, for the deliberate intention exception to apply, "the employer must have determined to injure the employee." *Id.* The employer's knowledge of the risk of harm (that the press was defective and dangerous) did not demonstrate the deliberate intent required for the exception to apply.

Similarly, courts have found the exception not applicable when: (1) an employer was aware of the presence of dangerous radioactive substances, but did not warn its employees, *see Rainer*, 402 F.3d at 614-16; (2) a worker was forced to work on a tall, dangerous electrical pole for which he was not trained and on which he was ultimately electrocuted, *McCray v. Davis H. Elliot Co.*, 419 S.W.2d 542, 543-44 (Ky. 1967); (3) a worker died in a trench that the employer knew could cause injury or death and was in violation of Kentucky OSHA regulations, *Moore*, 147 S.W.3d at 18-19; and (4) the employees developed cancer because of contamination at the plant where they worked, *Blanton v.*

*Cooper Indus.,* 99 F. Supp.2d 797, 805 (E.D. Ky. 2000). All of these cases illustrate the level of specific intent required for the deliberate intent exception to apply. Like the defendants in these cases, Defendant Arnold did not have a specific intent to harm. Her conduct was perhaps reckless, wanton or negligent, and, as a byproduct, may have injured Ms. Meade. Still, there is no evidence suggesting she acted with a specific intent to harm Ms. Meade.

It may be argued that the Defendant Arnold's intent to harm Ms. Meade can be inferred from the circumstances of Ms. Meade's death. However, such an argument was rejected by the Sixth Circuit in *Brierly*. In that case, a factor worker was killed by an explosion at the factory. *See Brierly*, 184 F.3d at 530. The decedent's estate sued and argued that their case was not barred by workers' compensation because the defendant's intent to kill the decedent could be inferred from the circumstances surrounding his death. *See id.* at 535. Citing the district court's opinion, the Sixth Circuit concluded that "[t]he statutory standard . . . requires more than implied intent; it requires 'deliberate intention.'" *Id.* at 535 (alteration in original). In reaching this conclusion, the *Brierly* court noted how a deliberately intended death looked different than a death caused by recklessness. *Id.* ("if [the worker's death] was intended, an explosion such as this seems like a strange, clumsy and unreliable way to carry it out.") (quoting and agreeing with the district court's opinion). Similarly, if Defendant Arnold was trying to kill or injure Ms. Meade, sending the alleged demotion notice to Ms. Meade's hospital bed seems like an odd way to do so. In short, the plaintiff's attempt to infer an intent to harm Ms. Meade is nothing but speculation. If anything, the evidence shows Defendant Arnold acted merely recklessly or negligently under the circumstances. Thus, there is no evidence of deliberate intent—only the plaintiff's speculation that Defendant Arnold's intent to kill or injure can be inferred or implied from the circumstances of Ms. Meade's alleged demotion. This is clearly

not enough.

Further, in rejecting the arguments of the plaintiff in *Brierly*, the court noted that the employer there took many precautions—"albeit clearly not enough"—to keep the deceased worker safe and tried to place the worker away from harm. *Id.* at 535. Defendant Arnold arguably was doing something similar. While the employer in *Brierly* was preventing the worker from getting physically harmed, it appears Defendant Arnold was trying to prevent Ms. Meade from getting fired. Specifically, Defendant Arnold was allegedly transferring Ms. Meade to a job with less responsibilities, in part, to prevent Ms. Meade from getting fired. *See* R. 45, Arnold Interview. Such evidence cuts against a finding of a deliberate intent to injure.

The plaintiff does make unsubstantiated statements that Defendant Arnold's conduct was "calculated to punish and intimidate [Ms. Meade] for absenteeism." R. 35 at 1. But, there simply is no evidence that suggests Defendant Arnold was acting in such a manner. Thus, these unsubstantiated statements alone do not support a finding that the deliberate intention exception should apply. The plaintiff cites the testimony of a former prison psychologist, Dr. Mark Hovee, to demonstrate that "Defendant Arnold's mistreatment of employees was not an isolated incident." R. 33 at 7. Such testimony, though, does not support the conclusion that Defendant Arnold had a "specific intent" to harm Ms. Meade. Rather, even when construing these facts in favor of the plaintiff, Dr. Hovee's testimony only shows that Defendant Arnold may have simply been a difficult supervisor to work for or a supervisor that lacked concern for the emotional well-being of her employees. Dr. Hovee's testimony—like the other evidence in the record—does not show a deliberate intent on the part of Defendant Arnold to harm Ms. Meade.

Similarly, the second exception to the exclusivity of workers' compensation does not apply

here. That exception does not apply unless an employee, officer or director causes injury or death to the harmed party via "willful and unprovoked physical aggression." Ky. Rev. Stat. § 342.690(1). Here, however, there is no evidence in the record that the defendants acted with any physical aggression. R. 41, Dep. of Thomas Meade at 90; R. 33, Exh. 4, Aff. of Joyce Arnold at ¶ 9. Hence, this exception does not apply.

The plaintiff cited *Brewer v. Helier*, 15 S.W.3d 1 (Ky. 1999), a physical aggression case, to support its position that the Workers' Compensation Act does not bar its claim. R. 35 at 13-14. However, *Brewer* is inapposite. The *Brewer* court was applying the physical aggression exception when it allowed the plaintiff to bring an action in state court for intentional sexual harassment. *Id.* at 8 (noting that employees' protection under the Workers' Compensation Act does not apply where there is "willful and unprovoked physical aggression"). Unlike in the present case, the claims in *Brewer* were based on "physical aggression" and intentional acts.[3] Therefore, *Brewer* has no relevance to this case.

---

[3] *Brewer* involved a sexual harassment claim filed against the plaintiff's supervisor for, among other things, calling him sexually explicit names and grabbing his buttocks. 15 S.W. at 4. Unlike *Brewer*, this case involves no physical contact. Moreover, Defendant Arnold allegedly had job-related reasons for the alleged demotion and for sending notice of it to the hospital, including to prevent Ms. Meade from being fired. In *Brewer*, however, the acts were clearly meant only to harm the plaintiff. Thus, *Brewer* is easily distinguishable from this case.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

1) The defendants' Motion for Summary Judgment, R. 33, is **GRANTED**.

2) The action is **DISMISSED WITH PREJUDICE** and shall be **STRICKEN** from the active docket.

3) Any pending motions are **DENIED AS MOOT** and any previously scheduled hearings or trials are **CANCELLED**.

4) The Judgment shall be entered concurrently with this Order.

This the 27th day of July, 2009.

Signed By:

*Amul R. Thapar*  AT

United States District Judge